IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| THADDEUS A. RICHARDSON ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> SAFEWAY, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | No. 1:12-cv-151 (AJT/IDD) |

## MEMORANDUM OPINION

Plaintiff Thaddeus Richardson, proceeding *pro se*, alleges that his former employer, defendant Safeway, Inc. ("Safeway"), discriminated against him on the basis of race, subjected him to a hostile work environment, and retaliated against him for engaging in protected activity, all in violation of Title VII of the Civil Rights Act of 1968, 42 U.S.C. § 2000e, *et seq*. On November 14, 2012, the defendant's filed a Motion for Summary Judgment [Doc. No. 26]. A hearing on that motion was held on December 14, 2012, at which the Court took the matter under advisement. The Court now issues this Memorandum Opinion.

### I. BACKGROUND

The case issues out of plaintiff's termination from Safeway following an argument with his supervisor, Justin Moore. Richardson, who is black, began working as a Night Stocker at Safeway in April, 2004. Compl. ¶¶ 4, 9, 10. In April, 2005, he was promoted to a Grocery Department Manager position. *Id.* ¶ 10. In this position, Richardson reported directly to the Assistant Managers, who in turn reported to the Store Manager. Matthews Decl. ¶ 18. In 2008, Richardson was transferred to Safeway Store 4003, which is located in Alexandria, Virginia. *Id.* ¶ 3. In July, 2010, Moore transferred to Store 4003 to work as a First Assistant Manager and in

that position became one of Richardson's supervisors. Richardson Dep. at 102. Moore's supervisor was Lori Valenzuela, the Store Manager. Valenzuela Decl. ¶ 3. On July 25, 2010, Moore was in his office engaged in training a Second Assistant Manager, Marcie Webb. Richardson Dep. at 102. Because the store was busy, Richardson called Moore on the telephone and asked for his help at the registers. The men exchanged words and, at the end of the conversation, Moore believed Richardson had hung up on him. *Id.* at 106-107, 115. Moore paged Richardson to his office and a confrontation ensued. Both men got "heated" and "loud," and Richardson refused to leave until Moore threatened to call the police. Richardson Dep. at 115; *see also* Webb Decl. ¶ 5.

Safeway maintains policies and procedures prohibiting discrimination on the basis of race, national origin, and retaliation. Ex. A-1 to Mem. in Supp. of Def. Mot. for Summ. J. Safeway also maintains a policy prohibiting violence in the workplace. *Id.* Ex. A-2. The Workplace Threats and Violence Policy provides, in pertinent part,

> Acts and/or threats of violence by an employee will not be tolerated and will be grounds for disciplinary action up to and including termination... Acts and/or threats of violence include physical altercations and actions or statements which either directly or indirectly, by words, gestures, symbols, intimidation, or coercion give reasonable cause to believe that the personal safety of the recipient or others may be at imminent risk...Intimidation includes behavior, which has the purposes or effect of inhibiting speech or actions by any act or threat of violence.

*Id.* Richardson acknowledges he was at all times familiar with these policies and procedures, which were posted prominently at the store where he worked. Richardson Dep. at 41-43. When Safeway receives a complaint of conduct in violation of the Workplace Violence Policy, the Loss Prevention Department immediately conducts an investigation. At the close of the investigation, the investigator prepares a Loss Prevention report of the incident. Matthews Decl. ¶¶ 2, 7. The investigator then gives the report, witness statements, and other related documents to the Human Resources Advisor that is assigned to the store where the complaint arose. *Id.* The Human

2

Resources Advisor reviews the information provided by the investigator and then recommends the appropriate discipline to the Human Resources Manager—in this case, the Human Resources Manager for the entire Eastern Division—who makes the final disciplinary decision.

Pursuant to its policies, Safeway immediately initiated an investigation into the incident between Moore and Richardson. Richardson was told not to return to work until the investigation was completed. Richardson Dep. at 126-127. The investigation was conducted primarily by Loss Prevention Investigator Brandon Corey Bradley, who is black. Bradley Decl. at ¶¶ 2, 6. Human Resources Advisor Lisa White, who is also black, assisted. Bradley Decl. ¶ 6. During the investigation, Bradley interviewed Moore, Webb, and Richardson. At that time, no one reported that Moore had made any racially charged remarks during the confrontation. In written statements to the investigator, Richardson did not make the allegations he makes in his Complaint— namely that Moore said "black ass" and otherwise acted in a discriminatory manner during the brief period in which the two worked together. *See* Ex. D to Def. Mem. at 8-34. After the conclusion of the investigation, White recommended to the Human Resources Manager for the Eastern Division, Timothy Matthews, that Richardson be terminated. Matthews reviewed the record and concluded that Richardson's conduct violated Safeway's Workplace Violence Policy, and that there was reasonable cause to believe that he had put the personal safety of others at imminent risk. Matthews Decl. ¶ 10. He then made the final decision that Richardson should be terminated; the decision was within Mathews' sole discretion and Moore had no input. *Id.* ¶ 12.

At the time of his decision, Matthews was unaware of Richardson's race or national origin and was unaware of any allegations of discrimination. *Id.* ¶ 13. The only documents he

reviewed in making his decision were those in the Loss Prevention file, none of which mention Richardson's race or national origin. *Id.* ¶ 13,; Ex. D to Def. Mem. at 8-34.

In his Complaint, Richardson alleges that during the approximately two month period that he and Moore worked together, he witnessed a number of incidents that evidence racial animus on the part of Moore;[1] but Richardson admits that he did not report any of these alleged incidents to the Loss Prevention Investigator, the Equal Employment Opportunity Commission, or his union representative and that he made all claims of race discrimination for the first time in his Charge of Discrimination, filed with the U.S. Equal Employment Opportunity Commission after his termination.[2] *Id.* at 118. Richardson also claims disparate treatment on the grounds that after the incident that triggered the investigation that led to Richardson's termination, Moore was only transferred for similar conduct. However, Safeway has not received any complaints of workplace violence filed against Moore; and Moore's transfer was not based on any finding that Moore had violated any Safeway policies, as was Richardson's termination. Matthews Decl. ¶ 16, Bradley Decl. ¶¶ 13, 14.

## II. STANDARD OF REVIEW

When the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R.

---

[1] These include (1) Moore made a black employee, "Saida," cry by yelling at her, but Richardson was too far away to hear what Moore actually said; (2) an incident between Moore and another black employee, "Alicia," though Richardson provides no other details and acknowledges he could not hear what happened; (3) Moore was hostile to Maurice Boone after Boone overheard Moore use the phrase "you people" when speaking to Richardson; and (4) during the July 25 incident, Moore asked Richardson "What is your black ass going to do about it?" Richardson Dep. at 65-66, 71-72, 73, 107, 137.

[2] Certain Safeway employees, including Richardson, are covered by a collective bargaining between Safeway and the United Food and Commercial Workers Union Local 400. After Richardson's termination, the Union filed a grievance, which was denied. The Union elected not to take the grievance to arbitration. Matthews Decl. ¶ 15.

4

Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The party seeking summary judgment has the initial burden to show the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48.

Whether facts are considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party; in other words, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Lettieri v. Equant, Inc.*, 478 F.3d 640, 642 (4th Cir. 2007). However, "unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment." *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994).

### III. ANALYSIS

In assessing Richardson's claims, "[t]he Court is mindful of its duty to construe liberally the complaints of *pro se* litigants." *Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 753 n. 19 (E.D. Va. 2009) (citation omitted). Accordingly, the Court concludes that, read liberally,

Richardson alleges claims of race discrimination, hostile work environment, and retaliation in his complaint.

## A. Race Discrimination

Richardson claims that he was wrongfully discharged based on a disparate application of Safeway's Workplace Violence Policy, in violation of 18 U.S.C. § 1981. Because of the lack of direct evidence of discrimination, the Court must apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which first requires that the plaintiff establish a *prima facie* case of discrimination. *Id.* at 802; *see also Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). To establish a *prima facie* case of disparate treatment, Richardson must show (1) he is a member of a protected class; (2) he has satisfactory job performance; (3) he was subjected to an adverse employment action, such as termination; and (4) similarly-situated employees outside his class received more favorable treatment. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336-337 (4th Cir. 2011); *Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 673-74 (E.D. Va. 2009). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Hill*, 354 F.3d at 285. If the defendant satisfies its burden of production, "the plaintiff is afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.'" *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002) (quoting *Burdine*, 450 U.S. at 253).

Assuming, without deciding, that Richardson can satisfy the first three prongs of his *prima facie* case, his claims fails because he cannot demonstrate that similarly-situated

employees outside of his class received more favorable treatment than him. Richardson points to Moore's transfer, compared to his termination, as evidence of disparate treatment. However, this evidence alone does not satisfy the fourth prong of the *prima facie* test, because Moore and Richardson are not similarly situated.

In order to be considered similarly situated, employees must be similarly situated in all relevant aspects. *See Bateman*, 614 F. Supp. 2d at 674. "The employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Miller v. Locke*, No. 1:08-cv-1149, 2009 WL 167486, at *4 (E.D. Va. June 12, 2009). Here, Moore and Richardson had different positions, different job duties and responsibilities, and different supervisors. Moreover, Moore was never accused of insubordination or threatening behavior and there is no evidence in the record supporting Richardson's allegation that Moore threatened another employee and was transferred as punishment.

Assuming, *arguendo*, that Richardson established his *prima facie* case under *McDonnell*, Safeway has articulated a legitimate, non-discriminatory reason for his termination—violation of the Safeway Workplace Violence Policy. Richardson has not shown that the provided reason is pretextual. In assessing pretext, it is the perception of the decisionmaker that is relevant. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) (citation omitted). In this case, Matthews, the decisionmaker, was unaware of Richardson's race at the time of his termination. Matthews relied solely on the investigation report and its accompanying documents, none of which contained any references to Richardson's race. The record also includes his uncontradicted statement under oath that he had no knowledge of Richardson's race

7

or national origin at that time he made his decision to terminate Richardson. Matthews Decl. ¶13. In his opposition, Richardson claims that Moore made the final decision to terminate him, but he has provided no admissible evidence to support this contention, which is flatly contradicted by the record. This contention cannot therefore create a material issue of fact. *See Carter*, 33 F.3d at 461-62 ("unsubstantiated, conclusory claims" are insufficient to carry a claimant's burden on summary judgment.) In addition, Moore is the only Safeway employee to whom Richardson attributes any racial animus. Richardson does not allege any "pattern or practice" of discrimination by Safeway or that any person in Safeway's management was motivated by racial animus in making the decision to terminate his employment. Because Richardson cannot make out a *prima facie* case of disparate treatment and has failed to produce evidence that Safeway's reason for terminating him was pretextual, the motion for summary judgment must be granted.[3]

The Court has carefully reviewed the plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment. While Richardson raises issues of fact relating to the circumstances surrounding the July 25 incident and his relationship with Moore, these factual disputes are not material to his claims and the central legal issues related to those claims: whether Moore and Richardson are similarly situated and whether the ultimate decision maker, Matthews, terminated Richardson based on his race. Thus, Richardson has not met his burden of showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

---

[3] Relying on the same facts, Richardson also alleged discrimination based on national origin. This claim fails as a matter of law because the decision maker, Matthews, and Richardson are all in the same protected class- U.S.-born. *See Mathews v. Huntington,* 499 F. Supp. 2d 258, 267 (E.D.N.Y. 2007). Moreover, Richardson has maintained throughout this litigation that he believes race and national origin to be the same.

8

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original)).

### B. Hostile Work Environment

To establish a claim based on hostile work environment, the plaintiff must show: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex and/or race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment; and (4) which is imputable to the employer." *Mosby-Grant v. City of Hagerstown,* 630 F.3d 326, 334 (4th Cir. 2010) (citations and internal quotation marks omitted). When a plaintiff asserts a claim for hostile work environment, "legally sufficient evidence is required to transform an ordinary conflict such as between [employees] into an actionable claim of discrimination." *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 282 (4th Cir. 2000).

Richardson's claim fails on the third prong, severity and pervasiveness, "which has both subjective and objective components." *Ocheltree v. Scollon Prods.,* 335 F.3d 325, 333 (4th Cir. 2003). "First, the plaintiff must show that he has subjectively perceived the environment to be abusive. Next, the plaintiff must demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir. 2009) (citation and internal quotation marks omitted). To satisfy these requirements, there must be a showing that "the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate' thereby creating an abusive atmosphere." *E.E.O.C. v. Cent. Wholesalers, Inc.,* 573 F.3d 167, 176 (4th Cir. 2009) (quoting *Jennings v. Univ. of N. Carolina,* 482 F.3d 686, 695 (4th Cir. 2007) (*en banc*)). In assessing a claim for hostile work environment, the Court must examine "all the circumstances," including "the frequency of the discriminatory conducts; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systs., Inc.*, 510 U.S. 17, 23 (1993). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Peary v. Gross*, 365 F. Supp. 2d 713, 728 (E.D. Va. 2005) (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)). In fact, "courts generally require that the offensive conduct occur on a nearly constant basis." *Leonard v. Tenet*, No. 1:03-cv-1176, 2004 WL 3688406, at *9 (E.D. Va. June 30, 2009)); *see also Ocheltree*, 335 F.3d at 333. "Hence '[a] recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 778 (1998)); *see also Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006).

Richardson alleges that, during the month he and Moore worked together, Moore created a hostile work environment. Specifically, Richardson claims that Moore made a racial remark during the July 25 incident, that Moore once referred to him and other African Americans as "you people," and that Moore was rude to several black employees. Richardson acknowledges, however, that he never actually heard Moore say anything racist to other employees, and prior to this litigation, Richardson had not reported that Moore used racially charged language on July 25. Richardson also maintains that no other Safeway employees engaged in discriminatory conduct during his employment there. Even if all of the comments attributed to Moore are considered to be race-based, the Court finds and concludes that they are the type of episodic, isolated remarks that have been found insufficient to support a claim for hostile work environment. *See, e.g., Faragher*, 525 U.S. at 788 (holding that Title VII does not protect against

"the ordinary tribulations of workplace, such as the sporadic use of abusive language... and occasional teasing"); *Sunbelt*, 521 F.3d at 315 ("[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test"); *Roberts v. Fairfax Cnty. Pub. Schs.*, 2012 WL 380130, at *5 (E.D. Va. Feb. 6, 2012) (holding that even the use of the term "nigger" two times by the plaintiff's supervisor was "insufficient to permeate [the plaintiff]'s work environment with discriminatory intimidation, ridicule, and insult.").

### C. Retaliation

The elements of a *prima facie* case of retaliation under Title VII are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citation omitted). Once a *prima facie* case is established, "the burden shifts to [the defendant] to rebut the presumption of retaliation by articulating a non-retaliatory reason for its action." *Laughlin v. Metro. Wash. Airports. Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). If the defendant meets its burden, the burden shifts back to the plaintiff who bears the ultimate burden of establishing that the employer's proffered explanation is pretext. *Id.*

"Title VII protects the right of employees to oppose any unlawful employment practice under Title VII. *Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 543 (4th Cir. 2003) (internal quotation marks omitted). "Employees are thus guaranteed the right to complain to their supervisors about suspected violations of Title VII." *Id.* at 543-44 (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650 (4th Cir. 2002)). However, "the employee must have an objectively reasonable belief that a violation is actually occurring." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 341 (4th Cir. 2006). "Because the analysis for determining whether an employee

11

reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law." *Id.* at 339.

Richardson bases his retaliation claim on his complaints to Moore and also to his Store manager, Lori Valenzuela. In that regard, he claims that he complained to Moore once about Moore's treatment of another employee, Saida, and that he complained to Valenzuela about Moore three times.[4] Even if it were assumed that these complaints constituted legitimate complaints of race discrimination, based on his objectively reasonable belief that a violation occurred, and therefore protected activity, Richardson's claim of retaliation fails because he cannot establish a causal link between the protected activity and his termination. At the time of Richardson's termination, those with the decision-making power had no knowledge that he had complained to either Moore or Valenzuela. Thus, there is no causal connection between the protected activity and the adverse employment action. *See Dow v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the employee engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case."); *see also Gregory v. City of Virginia Beach*, 428 F. Supp. 2d 422, 432 (E.D. Va. 2006) ("To establish a causal link between the protected activity and the adverse employment action, the decision-maker must have knowledge of the employee's protected

---

[4] Richardson did not hear what Moore said to Saida, and when he complained to Moore he said "..., why do you treat her like that? That's not how you do that. When you're on the sales floor, you're extremely loud." Richardson Dep. at 95. Richardson complained to Valenzuela about Moore's use of the phrases "you people" and "people like you." Although Richardson did not tell Valenzuela explicitly that he believed Moore's comments had racial connotations, he believed Valenzuela "understood where [he] was going with it." Richardson Dep. at 67. On the other hand, he also testified that he "didn't take it personal at the time." *Id.*

12

activity."). Moreover, even if Richardson established a *prima facie* case of retaliation, Safeway has articulated a legitimate, non-retaliatory reason for his termination. *See supra* Part III.A.

## CONCLUSION

For the above reason, the Court will grant the Defendant's Motion for Summary Judgment [Doc. No. 26].

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
December 18, 2012